UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOSEPHINE E. MANNING | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION H-06-432 |
| | § | |
| JOANNE B. BARNHART, | § | |
| Commissioner of the Social | § | |
| Security Administration, | § | |
| | § | |
| Defendant. | § | |

**OPINION ON SUMMARY JUDGMENT**

Plaintiff Josephine E. Manning filed this case under the Social Security Act, 42 U.S.C. § 405(g) for review of the final decision of the Commissioner denying her request for disability benefits. Manning has filed a motion for summary judgment (Dkt. 11). Having considered the parties' submissions, the administrative record, and applicable law, the court determines that Manning's motion must be denied, and the Commissioner's decision affirmed.[1]

**I.      Background**

On May 12, 2000 Manning applied for benefits under Titles II and XVI of the Social Security Act claiming disability since November 16, 1999 due to dizzy spells, high blood pressure, residual right arm problems, right leg weakness, fainting spells, crying spells,

---

[1] The parties have consented to the jurisdiction of this magistrate judge for all purposes, including final judgment. (Dkt. 15).

headaches, and obesity. (Tr. 23, 132). Her claim was initially denied by an ALJ decision on January 23, 2002. (Tr. 31). The Appeals Council on January 9, 2004 remanded the decision to the ALJ for further proceedings.[2] (Tr. 111). The ALJ conducted another hearing on March 11, 2005, at which time Manning amended the alleged onset date of her disability to January 1, 2004 because she had been working as a home health care provider from 2001 to 2003. (Tr. 306). On May 10, 2005 the ALJ found that Manning had the residual functional capacity to perform her past relevant work as a home attendant. (Tr. 19). Manning filed a request for review. (Tr. 12). However, the Appeals Council declined to review the ALJ's decision (Tr. 5), making the May 10, 2005 ALJ decision final. Manning filed suit in this court on February 8, 2006.

## II. Applicable Law

### A. Standard of Review

Section 405(g) of the Social Security Act sets forth the standard of review in this case. Federal courts review a decision denying Social Security benefits to determine whether (1) the Commissioner applied the proper legal standard and (2) the decision is supported by substantial evidence. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002); *Masterson v.*

---

[2] The Appeals Council's remand order directed the ALJ to determine whether Manning's earnings as a home health care provider represented substantial gainful activity. The order also directed the ALJ to obtain updated medical records from Manning's treating source and other medical sources; address Manning's work activity after the November 16, 1999 alleged disability onset date; obtain supplemental evidence from a vocational expert if warranted by the expanded record; and enter into the record the letter and brief dated October 28, 2003. (Tr. 111-12).

*Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). Substantial evidence is "more than a scintilla and less than a preponderance." *Masterson*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The court does not re-weigh the evidence, try issues de novo, or substitute its own judgment for that of the Commissioner. *Masterson*, 309 F.3d at 272. "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The courts strive for judicial review that is deferential but not so obsequious as to be meaningless. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).

### B. Standard for Determining Disability and the Commissioner's Decision

In order to qualify for disability benefits, a plaintiff must prove he has a disability, which is defined under the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A); *Masterson*, 309 F.3d at 271. The ALJ must follow a five-step sequential analysis to determine whether a plaintiff is in fact disabled:

1. Is the claimant currently engaged in substantial gainful activity, *i.e.*, working? If the answer is yes, the inquiry ends and the claimant is not disabled.

2. Does the claimant have a severe impairment? If the answer is yes, the inquiry proceeds to question 3.

> 3. Does the severe impairment equal one of the listings in the regulation known as Appendix 1? If so, the claimant is disabled. If not, then the inquiry proceeds to question 4.
>
> 4. Can claimant still perform his past relevant work? If so, the claimant is not disabled. If not, then the agency must assess the claimant's residual functional capacity (RFC).
>
> 5. Considering the claimant's residual functional capacity, age, education, and work experience, is there other work claimant can do? If so, claimant is not disabled.

20 C.F.R. §§ 404.1520, 416.920; *Waters*, 276 F.3d at 718. At step five, the burden shifts to the Commissioner to show that employment for the claimant exists in the national economy. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991).

The ALJ engaged in the five step procedure outlined above. He found that Manning had not engaged in substantial gainful activity since the amended onset date of January 1, 2004; that Manning's factitious disorder, high blood pressure, and right arm problems were severe; that the impairments was not severe to meet equal one of the impairments listed in Appendix 1, and that Manning could return to her past relevant work as a home attendant. Based on these findings, the ALJ concluded that Manning was not disabled as defined by the Social Security Act**.**

### III.   Analysis

Manning's motion for summary judgment focuses on two issues for review. First, Manning asserts that the ALJ committed legal error because he did not comply with the

Appeals Council's remand order.  Second, Manning asserts that the ALJ's finding that she can do the full range of light work is erroneous because the ALJ relied on old evidence.

### A. Failure to Comply with Appeals Council Remand Order

Manning argues that the ALJ failed to comply with the Appeals Council remand order by not entering into the record her attorney's letter and brief dated October 28, 2003.  This objection is dismissed because the record contains Manning's October 28, 2003 letter and brief.  (Tr. 104-09).

Manning also maintains that the ALJ did not address the arguments in the October 28, 2003 letter and brief.  Specifically, Manning argues that the ALJ failed to consider the impact of headaches on her ability to maintain concentration, and did not evaluate the impact of her obesity on her residual functional capacity.  Manning further notes that although the ALJ found that her headaches and obesity were severe in the January 2002 decision, on remand the ALJ eliminated these impairments from the findings without explanation.

Supporting her contention, Manning states that the records of Dr. Richard Lock, M.D. notes complaints of headaches and that her weight was 246 pounds in April 2000.  (Tr. 200)  Manning also points to reports from unknown sources submitted to the Metropolitan Transit authority reflecting that she is obese, weighing 246 pounds or more.  (Tr. 262).  She also refers to notes from the Houston Doctor's Medical Clinic indicating that she weighed 235 pounds in April 2004.  (Tr. 303)**.**  Manning also complains that there are no medical reports in the record from mid-2000 until April 2004.

5

Although the ALJ decision on remand does not mention the headache or obesity impairments referred to in the initial decision, the apparent discrepancy is readily explained by the amended disability onset date. Manning's complaints of headaches to her treating physicians prior to 2004 do not indicate the presence of a progressive condition affecting her ability to work after January 2004, the amended disability onset date. While a treating source reported in 2004 and 2005 that Manning complained of headaches and that her hypertension was uncontrolled (Tr. 303-05), none of her physicians reported that her headaches or obesity significantly affected her ability to work.

Furthermore, neither Manning nor her attorney mentioned headaches or obesity at the March 11, 2005 ALJ hearing. When the ALJ asked about her impairments, Manning stated that she suffered from injury to her right arm resulting in decreased mobility, extremely uncontrollable high blood pressure, and fatigue from medication. (Tr. 312 -13). At the end of the hearing, the ALJ asked Manning whether there was anything else she would like him to consider in making a decision. She answered that she was not as strong as she used to be and was in need of "mouth surgery," which had been precluded by her high blood pressure. (Tr. 329). Again Manning made no mention of headaches or obesity. Although the January 23, 2002 ALJ decision does state that Manning suffers from high blood pressure, residual right arm problems, headaches, and obesity (Tr. 36), on remand Manning did not raise headaches or obesity as alleged impairments. Given that Manning had significantly amended her disability claim on remand by asserting a disability onset date four years *after* her

previously claimed onset date (and two years after the initial ALJ decision), it is not unfair to demand clear specification of all claimed impairments in her testimony to the ALJ on remand. The ALJ can hardly be faulted for failing to address impairments which the claimant herself failed to assert in connection with the new onset date. Finally, there is no substantial evidence in this record indicating that Manning's headaches and obesity have been severe since January 2004. As a result, the ALJ did not fail to comply with the remand order by not addressing Manning's headaches or obesity on her ability to work.

### B. Failure to Update the Record

Manning suggests that the ALJ relied upon old evidence. Specifically, she states that the ALJ relied on a July 2000 State agency assessment and statements made to a consulting psychiatrist in September 2000 (Tr. 267) to support the residual functional capacity conclusion that she can do light work. Manning asserts, however, that this old evidence is irrelevant because she amended the onset of her disability to January 2004.[3]

The ALJ opinion states that July 2000 State agency assessment and September 2000 statements provides support for only part of the residual functional capacity conclusion in this decision. The ALJ opinion cites other factors supporting his residual functional capacity conclusion such as Manning's appearance and demeanor while testifying, infrequent trips to the doctor for allegedly disabling symptoms, as well as significant gaps in her history of

---

[3] Manning contradicts this contention by pointing to medical records prior to January 1, 2004 to support her previous argument that the ALJ failed to consider the impact of headaches and obesity on her residual functional capacity.

treatment. The ALJ also considered Dr. Vinh Trinh's February 23, 2005 notes which indicated that Manning is unable to maintain concentration for two hours at a time and would be unable to sustain an eight hour work day. However, the ALJ did not rely on this evidence because Dr. Trinh "apparently relied quite heavily on the subjective report of symptoms and limitations provided by Manning, and seemed to uncritically accept as true most, if not all, of what the claimant reported." (Tr. 26). The ALJ went on to explain that there were good reasons for questioning the reliability of Manning's subjective complaints, including inconsistent statements regarding her disability and inconsistent information regarding her daily activities.

While the ALJ must give more weight to a treating physician's opinion than other medical opinions, the ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Newton*, 209 F. 3d at 455. Administrative regulations provide that when an ALJ declines to give a treating physician's opinion controlling weight, the ALJ must consider numerous factors set forth in the regulations, and must give good reasons for the weight assigned to the treating source's opinion. 20 C.F.R. 404.1527(d)(2); *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001). Good cause exists to discount a treating physician's opinion when it is conclusory, unsupported by medically acceptable evidence, or otherwise bereft of substantial support. *Newton*, 209 F.3d at 456. Here, the ALJ explains that the Dr.Trinh's own report fails to reveal the type of significant clinical and laboratory abnormalities one would expect if Manning were in fact disabled. The ALJ also noted that

Dr. Trinh's " own report is inconsistent with his own treatment notes rendering the doctor's opinion less persuasive."  (Tr. 27).

Furthermore, the ALJ was not required to give controlling weight to Dr. Trinh's opinion that Manning was unable to work.  The Fifth Circuit has repeatedly held that an opinion that a claimant is unable to work is not the type of treating physician's opinion that is entitled to controlling weight.  *Barajas v. Heckler*, 738 F.2d 641, 645 (5th Cir. 1984) ("A statement made by a treating physician that a claimant is disabled does not mean that the claimant is disabled for purposes of the Social Security Act; that conclusion may be determined only by the [Commissioner].")

Finally, Manning argues that the ALJ made no attempt to obtain updated medical records himself and that the ALJ should have recontacted the treating physician.  It is the duty of the administrative law judge to develop the facts relative to a claim for benefits fully and fairly.  *Kane v. Heckler*, 731 F. 2d 1216, 1219 (5th Cir. 1984).  Nonetheless, the failure of the ALJ to develop an adequate record is not ground for reversal per se; rather the claimant must, in addition, show that the ALJ's error might have altered the result.  *Id*.; *Newton,* 209 F.3d at 458.  Manning has not proffered such evidence.  While Manning suggests that the record contains an evidentiary gap especially concerning obesity and headaches, she has not shown that any additional evidence would have led to a different conclusion than the one reached by the ALJ.

**IV. Conclusion**

The Commissioner's decision is supported by substantial evidence in the record and is based on proper legal standards. Therefore plaintiff's motion for summary judgment is DENIED, and summary judgment will be granted in favor of the Commissioner.

Signed at Houston, Texas on December 14, 2006

Stephen Wm Smith
United States Magistrate Judge